STAY

# U.S. District Court
# Northern District of Florida - District Version 2.5 (Tallahassee)
# CIVIL DOCKET FOR CASE #: 4:05-cv-00257-RH-WCS

| | |
|---|---|
| STATE OF FLORIDA ex rel et al v. ALPHARMA INC et al | Date Filed: 07/20/2005 |
| Assigned to: CHIEF JUDGE ROBERT L HINKLE | Jury Demand: Plaintiff |
| Referred to: MAGISTRATE JUDGE WILLIAM C SHERRILL, JR | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

Case in other court:  2nd Judicial Circuit for Leon
County, 98-03032F;
03-CA1165A

Cause: 28:1331 Fed. Question

## Plaintiff

**STATE OF FLORIDA ex rel**     represented by     **MARK S THOMAS**
ATTORNEY GENERAL -
PL-01 - TALLAHASSEE FL
STATE OF FLORIDA
400 S MONROE ST
PL-01 THE CAPITOL
TALLAHASSEE, FL
32399-1050
850-414-3600
Fax: 850-487-9475
Email:
mark_thomas@oag.state.fl.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARY SIEGER MILLER**
ATTORNEY GENERAL
STATE OF FL -
TALLAHASSEE FL
STATE OF FLORIDA
PL 01 THE CAPITOL

TALLAHASSEE, FL
32399-1050
850-414-3777
Fax: 850-487-9475
Email:
Mary_Miller@oag.state.fl.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BERNABE ANTONIO ICAZA**
ATTORNEY GENERAL -
PL-01 - TALLAHASSEE FL
400 S MONROE ST
PL-01 THE CAPITOL
TALLAHASSEE, FL
32399-1050
850-414-3600
Fax: 850-487-9475
Email:
BernabeIcaza@hotmail.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**VEN-A-CARE OF THE FLORIDA KEYS INC**
*a Florida Corporation by and through its principal officers and directors*

**Plaintiff**

**ZACHARY T BENTLEY**

**Plaintiff**

**T MARK JONES**

V.

**Defendant**

**ALPHARMA INC**       represented by   **STEPHEN A ECENIA**
                                               RUTLEDGE ECENIA

UNDERWOOD ETC -
TALLAHASSEE FL
215 S MONROE ST
PO BOX 551
TALLAHASSEE, FL
32301-1841
850-681-6788
Fax: 850-681-6515
Email: steve@reuphlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| **ALPHARMA USPD INC** | represented by | **STEPHEN A ECENIA** |
|---|---|---|
| *formerly known as* | | (See above for address) |
| BARRE-NATIONAL INC | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| **BARRE PARENT CORPORATION** | represented by | **STEPHEN A ECENIA** |
|---|---|---|
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

**FAULDING INC**

**Defendant**

| **IVAX CORPORATION** | represented by | **CHRISTOPHER L BARNETT** |
|---|---|---|
| | | STEARNS WEAVER MILLER ETC - MIAMI FL |
| | | MUSEUM TWR - STE 2200 |
| | | 150 W FLAGLER ST |
| | | MIAMI, FL 33130-1536 |
| | | 305-789-3200 |
| | | Fax: 305-789-3395 |
| | | Email: cbarnett@swmwas.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**JAY BRIAN SHAPIRO**
STEARNS WEAVER MILLER
ETC - MIAMI FL
MUSEUM TWR - STE 2200
150 W FLAGLER ST
MIAMI, FL 33130-1536
305/789-3200
Fax: 305/789-3395
Email: jshapiro@swmwas.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SAMUEL OLDS PATMORE**
STEARNS WEAVER MILLER
ETC - MIAMI FL
MUSEUM TWR - STE 2200
150 W FLAGLER ST
MIAMI, FL 33130-1536
305-789-3200
Fax: 305-789-3395
Email: spatmore@swmwas.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**IVAX PHARMACEUTICALS**     represented by     **CHRISTOPHER L BARNETT**
**INC**                                         (See above for address)
*formerly known as*                             *LEAD ATTORNEY*
ZENITH-GOLDLINE                                 *ATTORNEY TO BE NOTICED*
PHARMACEUTICALS INC

**JAY BRIAN SHAPIRO**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SAMUEL OLDS PATMORE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MAYNE GROUP LTD**

**Defendant**

**SANDOZ INC**
*formerly known as*
GENEVA
PHARMACEUTICALS INC

represented by **JONATHAN PAUL KILMAN**
GRAYROBINSON PA -
TALLAHASSEE FL
301 S BRONOUGH ST STE 600

PO BOX 11189
TALLAHASSEE, FL
32302-3189
850-577-9090
Fax: 850-577-3311
Email:
jkilman@gray-robinson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MICHAEL E RILEY**
GRAYROBINSON PA -
TALLAHASSEE FL
301 S BRONOUGH ST STE 600

PO BOX 11189
TALLAHASSEE, FL
32302-3189
850/577-9090
Fax: 577-3311
Email:
mriley@gray-robinson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PETER V ANTONACCI**
GRAYROBINSON PA -
TALLAHASSEE FL
301 S BRONOUGH ST STE 600

PO BOX 11189
TALLAHASSEE, FL
32302-3189
850-577-9090
Fax: 850-577-3311

Email: pva@gray-robinson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**NOVARTIS AG**      represented by   **JONATHAN PAUL KILMAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MICHAEL E RILEY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PETER V ANTONACCI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PUREPAC PHARMACEUTICAL CO**      represented by   **STEPHEN A ECENIA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/20/2005 | 2 | NOTICE OF REMOVAL from 2nd Judicial Circuit for Leon County, case number 98-3032F; 03-CA1165 A. ( Filing fee $ 250 receipt number 400108079.), filed by SANDOZ INC, NOVARTIS AG. (Attachments: # 1 Exhibit A)(amm, Tallahassee) (Entered: 07/26/2005) |
| 07/20/2005 | 3 | CIVIL COVER SHEET. (amm, Tallahassee) (Entered: 07/26/2005) |
| 07/20/2005 | | Judge ROBERT L HINKLE and WILLIAM C SHERRILL, JR added. (amm, Tallahassee) (Entered: 07/26/2005) |

| | | |
|---|---|---|
| 07/26/2005 | 1 | Corporate Disclosure Statement/Certificate of Interested Persons by IVAX CORPORATION, IVAX PHARMACEUTICALS INC. (BARNETT, CHRISTOPHER) (Entered: 07/26/2005) |
| 07/29/2005 | 4 | NOTICE of Appearance by STEPHEN A ECENIA on behalf of ALPHARMA USPD INC, BARRE PARENT CORPORATION, PUREPAC PHARMACEUTICAL CO, ALPHARMA INC (ECENIA, STEPHEN) (Entered: 07/29/2005) |
| 07/29/2005 | 5 | Corporate Disclosure Statement/Certificate of Interested Persons by ALPHARMA USPD INC. (ECENIA, STEPHEN) (Entered: 07/29/2005) |
| 07/29/2005 | 6 | Corporate Disclosure Statement/Certificate of Interested Persons by ALPHARMA INC. (ECENIA, STEPHEN) (Entered: 07/29/2005) |
| 07/29/2005 | 7 | Corporate Disclosure Statement/Certificate of Interested Persons by BARRE PARENT CORPORATION. (ECENIA, STEPHEN) (Entered: 07/29/2005) |
| 07/29/2005 | 8 | Corporate Disclosure Statement/Certificate of Interested Persons by PUREPAC PHARMACEUTICAL CO. (ECENIA, STEPHEN) (Entered: 07/29/2005) |
| 07/29/2005 | 9 | Joint MOTION to Stay *Proceedings* by ALPHARMA USPD INC, BARRE PARENT CORPORATION, IVAX CORPORATION, IVAX PHARMACEUTICALS INC, PUREPAC PHARMACEUTICAL CO, ALPHARMA INC. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J# 11 Exhibit K)(ECENIA, STEPHEN) (Entered: 07/29/2005) |
| 07/29/2005 | 10 | SCHEDULING ORDER : Rule 26 Meeting Report due by 9/12/2005. Discovery due by 11/25/2005.Signed by Judge ROBERT L HINKLE on 7/29/05. (amm, Tallahassee) (Entered: 08/01/2005) |
| 08/01/2005 | 11 | NOTICE *of Filing Copy of Pleading on File in State Court* by NOVARTIS AG (RILEY, MICHAEL) (Entered: 08/01/2005) |

| 08/04/2005 | 12 | NOTICE REGARDING ELECTRONIC FILING REQUIREMENT (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7)(amm, Tallahassee) (Entered: 08/04/2005) |
| 08/04/2005 | 13 | NOTICE REGARDING ADMISSION TO PRACTICE (Attachments: # 1 # 2 # 3 # 4)(amm, Tallahassee) (Entered: 08/04/2005) |
| 08/05/2005 | 14 | NOTICE *of Non-Opposition to Defendants' Motion Requesting Stay of All Proceedings* by STATE OF FLORIDA ex rel, VEN-A-CARE OF THE FLORIDA KEYS INC (MILLER, MARY) (Entered: 08/05/2005) |
| 08/05/2005 | 15 | Notice Of Filing ACCEPTANCE OF SERVICE Executed Acknowledgement filed by STATE OF FLORIDA ex rel. (dlt, Tallahassee) (Entered: 08/08/2005) |
| 08/11/2005 | 16 | Corporate Disclosure Statement/Certificate of Interested Persons by SANDOZ INC. (KILMAN, JONATHAN) (Entered: 08/11/2005) |
| 08/18/2005 | 17 | MOTION to Remand *and Memorandum of Law* by STATE OF FLORIDA ex rel. (MILLER, MARY) (Entered: 08/18/2005) |
| 08/18/2005 | 18 | NOTICE of Appearance by SAMUEL OLDS PATMORE on behalf of IVAX CORPORATION, IVAX PHARMACEUTICALS INC (PATMORE, SAMUEL) (Entered: 08/18/2005) |
| 08/18/2005 | | Set/Reset Deadlines as to 17 MOTION to Remand *and Memorandum of Law*. (Response due by 9/6/2005) (amm, Tallahassee) (Entered: 08/19/2005) |
| 08/19/2005 | 19 | NOTICE REGARDING ADMISSION TO PRACTICE AND ELECTRONIC FILING REQUIREMENT as to Counsel for Ven-A-Care of the Florida Keys (Attachments: # 1 # 2 # 3)(amm, Tallahassee) (Entered: 08/19/2005) |
| 08/22/2005 | 20 | MOTION to Stay *Unopposed Suggestion to Stay Proceedings* by ALPHARMA USPD INC, BARRE PARENT CORPORATION, IVAX CORPORATION, IVAX PHARMACEUTICALS INC, PUREPAC PHARMACEUTICAL CO, ALPHARMA INC. |

| | | |
|---|---|---|
| | | (Attachments: # 1)(ECENIA, STEPHEN) (Entered: 08/22/2005) |
| 08/23/2005 | 21 | NOTICE of Appearance by JAY BRIAN SHAPIRO on behalf of IVAX CORPORATION, IVAX PHARMACEUTICALS INC (SHAPIRO, JAY) (Entered: 08/23/2005) |
| 08/26/2005 | 22 | NOTICE of Appearance by BERNABE ANTONIO ICAZA on behalf of STATE OF FLORIDA ex rel (ICAZA, BERNABE) (Entered: 08/26/2005) |
| 08/29/2005 | 23 | Letter from Judical Panel on Multidistrict Litigation with attached Conditional Transfer Order (amm, Tallahassee) (Entered: 09/01/2005) |
| 08/30/2005 | 24 | ORDER STAYING PROCEEDINGS: Granting 20 Motion to Stay. All proceedings are stayed until the earlier 1. entry of a transfer order by the MDL Panel or 2. 10 days after the entry of an order denying transfer. Signed by Judge ROBERT L HINKLE. (amm, Tallahassee) (Entered: 09/01/2005) |
| 09/06/2005 | 26 | CONDITIONAL TRANSFER ORDER from MDL Panel (amm, Tallahassee) (Entered: 09/08/2005) |
| 09/08/2005 | 25 | NOTICE *of Withdrawal as Attorney of Record* by SANDOZ INC, NOVARTIS AG (ANTONACCI, PETER) (Entered: 09/08/2005) |
| 09/30/2005 | 27 | Letter forwarding file to MDL court (amm, Tallahassee) (Entered: 10/03/2005) |

## PACER Service Center

### Transaction Receipt

| 10/06/2005 08:58:00 | | | |
|---|---|---|---|
| **PACER Login:** | us2510 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:05-cv-00257-RH-WCS |

| Billable Pages: | 4 | Cost: | 0.32 |
| --- | --- | --- | --- |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. ~~5:04 CV 432~~ – RH/WCS
4:05 CV 257 – RH/WCS

THE STATE OF FLORIDA

_ex rel._,

VEN-A-CARE OF THE FLORIDA
KEYS, INC., a Florida Corporation, by
and through its principal officers and
directors, ZACHARY T. BENTLEY
and T. MARK JONES,

          Plaintiffs,

vs.

ALPHARMA, INC.; ALPHARMA,
USPD, INC., f/k/a BARRE-NATIONAL,
INC.; BARRE PARENT CORPORATION;
FAULDING, INC.; IVAX CORPORATION;
IVAX PHARMACEUTICALS, INC., f/k/a
ZENITH-GOLDLINE PHARMACEUTICALS,
INC.; MAYNE GROUP, LTD.; SANDOZ INC.,
f/k/a GENEVA PHARMACEUTICALS, INC.;
NOVARTIS AG; and PUREPAC
PHARMACEUTICAL CO.,

          Defendants.

_____/

## NOTICE OF REMOVAL

    PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§1331, 1441, and 1446,

Defendants Alpharma, Inc., Alpharma, USPD, Inc. (f/k/a Barre-National, Inc.), Barre

Parent Corporation, Faulding, Inc., IVAX Corporation, IVAX Pharmaceuticals, Inc.

(f/k/a Zenith-Goldline Pharmaceuticals, Inc.), Mayne Group, Ltd., Sandoz Inc. (f/k/a

SCANNED/POSTED/RETURNED IN FUND

Date _____ By _____

Geneva Pharmaceuticals, Inc.), Novartis AG, and Purepac Pharmaceutical Co. hereby notice the removal of this civil action from the Court of the Second Judicial Circuit in and for Leon County, Florida to the United States District Court for the Northern District of Florida.

Removal is proper here because this is a "civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). This Court has original jurisdiction based on federal question jurisdiction under 28 U.S.C. § 1331. Further, this action presents an actual case or controversy because the Complaint alleges damages as a result of Defendants' alleged conduct. (Compl. pp. 41-44).

In further support of this Notice of Removal, the Defendants state as follows:

1. Plaintiffs filed their Complaint in the Court of the Second Judicial Circuit in and for Leon County, Florida, on April 6, 2005. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit A is a copy of all pleadings and process served upon any of the Defendants[1].

2. Defendants have filed this Notice of Removal within thirty days from the date on which any defendant was served with the Summons and Complaint and, therefore, the Notice is timely. 28 U.S.C. § 1446(b).

3. A true copy of this Notice of Removal will be served on counsel for plaintiffs and will be filed with the Court of the Second Judicial Circuit in and for Leon

---

[1]Not all of the named defendants in this action have been served with process in this action. For those defendants who have not been served, their counsels' signatures below indicate their consent to the removal of this action. Such consent is not a waiver of service of process nor of any right to contest the exercise of personal jurisdiction over any defendant.

County, Florida promptly after filing this Notice, in accordance with 28 U.S.C. § 1446(d).

4.     This action is properly removed to the United States District Court for the Northern District of Florida because the Court embraces the Court of the Second Judicial Circuit in and for Leon County, Florida, "the place where such action is pending." 28 U.S.C. § 1441(a); 28 U.S.C. § 89(a).

### Plaintiffs' Complaint

5.     On April 6, 2005, Plaintiffs filed (but did not serve) a complaint styled *State of Florida v. Alpharma, Inc.*, Nos. 03-CA1165A, 98–3032F (Fla. 2d Cir. Ct. April 6, 2005) alleging that Defendants misrepresented their respective average wholesale prices ("AWP") and wholesale acquisition costs ("WAC") in connection with their reporting of their product pricing information to First DataBank, Inc., a consolidator and publisher of prescription drug pricing information. *See* Compl. ¶¶ 26–29.

6.     According to the Complaint, these alleged misrepresentations of AWP and WAC defrauded the Florida Medicaid Program, causing it to pay provider claims "in amounts far in excess of the prices and costs generally and currently available in the marketplace. . . ." *See* Compl. ¶ 30. Relying on this predicate, the Complaint asserts claims under Florida's False Claims Act, Section 68.081, Fla. Stat., *et seq.*, and Florida common law.

## Federal Question Jurisdiction

7.    This action is subject to removal under 28 U.S.C. § 1441(a), because this Court has federal question jurisdiction under 28 U.S.C. § 1331. Specifically, the Complaint establishes federal question jurisdiction because Plaintiffs' claims, as pleaded, necessarily raise substantive, disputed issues of federal law, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, No. 04-603, 545 U.S. ___, 2005 U.S. LEXIS 4659, at *13 (June 13, 2005).

8.    For example, the Complaint alleges fraud and false statements made in connection with the Defendants' reporting of AWP and WAC, as discussed above. AWP and WAC, in turn, have a federally defined role in Medicaid reimbursement, including Florida's Medicaid reimbursement scheme. Medicaid, in general, is governed by federal law. *See* 42 U.S.C. § 1936a, *et seq.*; 42 C.F.R. § 430, *et seq.* Additionally, even the Florida statute authorizing the Florida Agency For Health Care Administration ("AHCA") to administer Florida's Medicaid program provides that authority under "Title XIX of the Social Security Act." *See* §409.902, Florida Statutes.

Moreover, the procedure by which the Federal Upper Limit is set (which is a determining element of how AHCA sets reimbursement under the Florida Medicaid program, *see* Complaint, ¶¶ 19-20, one of the central issues in this case) is plainly a matter of federal law. *See* 42 C.F.R. §447.332.

9.    As the Supreme Court recently held in clarifying the law of federal question removal jurisdiction, federal jurisdiction is warranted here because Plaintiffs' claims

hinge on the interpretation and application of federal law, raising "important issues of federal law that sensibly belong[] in federal court." *Grable*, 2005 U.S. LEXIS 4659, at *14. The substantial federal issues raised by Plaintiffs' claims can be entertained by this Court "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 2005 U.S. LEXIS 4659, at *13.

10.    Under 28 U.S.C. § 1441 and principles of supplemental jurisdiction under 28 U.S.C. § 1367, where, as here, any portion of the action arises under federal law, Defendants have the right to remove the entire action to this Court, and the Court should maintain jurisdiction over the entire action.

### Reservation of Rights

11.    Defendants reserve their right to amend or supplement this Notice of Removal.

**WHEREFORE**, Defendants Alpharma, Inc., Alpharma, USPD, Inc. (f/k/a Barre-National, Inc.), Barre Parent Corporation, Faulding, Inc., IVAX Corporation, IVAX Pharmaceuticals, Inc. (f/k/a Zenith-Goldline Pharmaceuticals, Inc.), Mayne Group, Ltd., Sandoz Inc. (f/k/a Geneva Pharmaceuticals, Inc.), Novartis AG, and Purepac Pharmaceutical Co. remove this civil action from the Court of the Second Judicial Circuit in and for Leon County, Florida to the United States District Court for the Northern District of Florida.

|  | Respectfully submitted, |
|---|---|
| Wayne A. Cross<br>Michael J. Gallagher<br>Paul Olszowka<br>Sheryl Dickey<br>WHITE & CASE LLP<br>1155 Avenue of the Americas<br>New York, NY 10036<br>*Attorneys for Sandoz, Inc.* | GRAYROBINSON, P.A.<br>*Attorneys for Novartis AG*<br>*and Sandoz, Inc.*<br>301 South Bronough Street<br>Suite 600 (32301)<br>Post Office Box 11189<br>Tallahassee, Florida 32302<br>(850) 577-9090 — Telephone<br>(850) 577-3311 — Facsimile |
| Dennis P. Orr<br>Grant J. Esposito<br>Michelle J. Annunziata<br>MAYER, BROWN, ROWE & MAW LLP<br>1675 Broadway<br>New York, NY 10019<br>(212) 506-2500 — Telephone<br>*Attorneys for Novartis AG* | By:<br>PETER ANTONACCI<br>pva@gray-robinson.com<br><br>JONATHAN P. KILMAN<br>jkilman@gray-robinson.com |

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
*Attorneys for Defendants IVAX Corporation*
*and IVAX Pharmaceuticals, Inc.*
Suite 2200 - Museum Tower
150 West Flagler Street
Miami, FL 33130
(305) 789-3200 - Telephone
(305) 789-3395 - Facsimile

By: _____
    JAY B. SHAPIRO
    jshapiro@swmwas.com
    CHRISTOPHER L. BARNETT
    cbarnett@swmwas.com
    SAMUEL O. PATMORE
    spatmore@swmwas.com

Dated: July ____, 2005.

Respectfully submitted,

HYMAN, PHELPS & MCNAMARA, P.C.
*Attorneys for Defendants*
*Alpharma Inc., Alpharma USPD Inc.,*
*Barre Parent Corporation and Purepac*
*Pharmaceutical Co.*
700 Thirteenth Street, N.W. - Suite 1200
Washington, D.C.  20005
(202) 737-4580 – Telephone
(202) 737-9329 – Fascimile


By: _____
    JOHN R. FLEDER
    jrf@hpm.com

Dated:  July 19, 2005

Respectfully submitted,

REED SMITH LLP
*Attorneys for Defendants*
*Faulding, Inc. and Mayne Group Ltd.*
599 Lexington Avenue - 28th Floor
New York, NY 10022
(212) 549-0249 - Telephone
(212) 549-0249 - Facsimile

By: _____

ROBERT J. MILLER
rmiller@reedsmith.com

Dated: July **19**, 2005.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Notice of Removal was mailed this ___ day of July, 2005, via first class mail, postage prepaid, to the following counsel of record:

MARK S. THOMAS
MARY S. MILLER
Assistant Attorneys General
CHARLES J. CRIST, JR.
State of Florida Attorney General
Office of the Attorney General
Medicaid Fraud Control Unit
PL-01, The Capitol
Tallahassee, FL 32399-1050

JAMES J. BREEN
ALISON W. SIMON
The Breen Law Firm, P.A.
Post Office Box 297470
Pembroke Pines, FL 33029-7470
*Attorneys for Ven-A-Care of the Florida Keys, Inc.*

GARY AZORSKY
SHERRIE SAVETT
SUSAN SCHNEIDER THOMAS
JOY P. CLAIRMONT
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
*Attorneys for Ven-A-Care of the Florida Keys, Inc.*

Wayne A. Cross
Michael J. Gallagher
Paul Olszowka
Sheryl Dickey
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
*Attorneys for Sandoz, Inc.*

PETER ANTONACCI
pva@gray-robinson.com
JONATHAN P. KILMAN
jkilman@gray-robinson.com

GRAYROBINSON, P.A.
*Attorneys for Novartis AG and Sandoz, Inc.*
301 South Bronough Street
Suite 600 (32301)
Post Office Box 11189
Tallahassee, Florida 32302
(850) 577-9090 — Telephone
(850) 577-3311 — Facsimile

Dennis P. Orr
Grant J. Esposito
Michelle J. Annunziata
MAYER, BROWN, ROWE & MAW LLP
1675 Broadway
New York, NY 10019
*Attorneys for Novartis AG*

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND FOR
LEON COUNTY, FLORIDA

| | |
|---|---|
| THE STATE OF FLORIDA )<br><br>**ex rel.** )<br><br>VEN-A-CARE OF THE )<br>FLORIDA KEYS, INC., )<br>a Florida Corporation, by and )<br>through its principal )<br>officers and directors, )<br>ZACHARY T. BENTLEY and )<br>T. MARK JONES, )<br>)<br>**Plaintiffs** )<br>)<br>v. )<br>)<br>ALPHARMA, INC.; ALPHARMA, )<br>USPD, INC. f/k/a BARRE-NATIONAL, )<br>INC.; BARRE PARENT )<br>CORPORATION; FAULDING, INC.; )<br>IVAX CORPORATION; IVAX )<br>PHARMACEUTICALS, INC. f/k/a )<br>ZENITH-GOLDLINE )<br>PHARMACEUTICALS, INC.; MAYNE )<br>GROUP, LTD.; SANDOZ, INC., )<br>f/k/a GENEVA PHARMACEUTICALS, )<br>INC.; NOVARTIS, A.G.; and PUREPAC )<br>PHARMACEUTICAL CO. )<br>)<br>**Defendants.** )<br>_____ ) | CIVIL ACTION NOS.   98-3032F<br>03-CA1165A<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, the STATE OF FLORIDA, acting by and through its Attorney General,

Charles J. Crist, Jr., brings this cause of action against Defendants, Alpharma, Inc.;

Alpharma, USPD, Inc. f/k/a Barre-National, Inc.; Barre Parent Corporation; Faulding,



EXHIBIT
A

Inc.; Ivax Corporation; Ivax Pharmaceuticals, Inc., f/k/a Zenith Goldline Pharmaceuticals, Inc.; Mayne Group, Ltd.; Sandoz, Inc., f/k/a Geneva Pharmaceuticals, Inc.; Novartis, A.G.; and Purepac Pharmaceutical, Co.

## INTRODUCTION

1. This is a civil action to recover damages in excess of Fifteen Thousand Dollars ($15,000), plus all applicable civil penalties and other relief from Defendants for making or causing to be made, false or fraudulent statements, representations and claims to the State of Florida's Medicaid Program for the specified dispensed pharmaceuticals from July 1, 1994, through and including the present. The specified pharmaceuticals (hereinafter "the Subject Drugs") at issue are attached as Exhibit "A" and incorporated by reference in this Complaint.

2. Plaintiffs seek recovery against Defendants pursuant to the Florida False Claims Act §§ 68.081 - 68.092, Florida Statutes (hereinafter "the Act"), and for common law fraud.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of the causes of action set forth in this Complaint pursuant to Art. V § 20(3), Fla. Const.; § 26.012, Florida Statutes; and §§ 68.081 - 68.092, Florida Statutes.

4. Venue is proper in Leon County pursuant to § 68.083(3), Florida Statutes.

## PARTIES

5. The State of Florida, Office of the Attorney General, Department of Legal Affairs (hereinafter "the Attorney General"), is acting on behalf of the Florida Agency for

Health Care Administration (hereinafter "AHCA"), which administers the Florida Medicaid Program pursuant to § 409.902, Florida Statutes, and pursuant to the Attorney General's own authority under §§ 409.920 and 68.083, Florida Statutes.

6. Private person Plaintiff/Relator Ven-A-Care of the Florida Keys, Inc. (hereinafter "the Relator" or "Ven-A-Care") originally provided information to the State of Florida which is the basis of this suit pursuant to § 68.083(3), Florida Statutes and is included as a named party Plaintiff in this case pursuant to § 68.083(2) and (3), Florida Statutes.

7. Defendant Ivax Corporation (hereinafter "Ivax"), is a corporation organized under the laws of Florida with its principal offices in Miami, Florida. Ivax is the corporate parent of Ivax Pharmaceuticals, Inc., formerly know as Zenith-Goldline Pharmaceuticals, Inc. (hereinafter "Ivax/Zenith-Goldline"), a Florida corporation with its principal offices in Miami, Florida. To the extent that the acts of Ivax/Zenith-Goldline at issue in this Complaint were performed by or otherwise attributable to Ivax, or any subsidiary or affiliate of it, then judgment should be entered against Ivax where appropriate. At all times material to this Complaint, Ivax transacted business in the State of Florida by, including but not limited to, selling directly or through wholesalers its specified drugs, including the Subject Drugs identified in this Complaint, in the State of Florida, including Leon County.

8. Defendant Sandoz, Inc., f/k/a Geneva Pharmaceuticals, Inc. (hereinafter "Sandoz/Geneva"), is a corporation organized under the laws of Colorado with its principal offices in Princeton, New Jersey. Novartis, A.G. (hereinafter "Novartis") is a Swiss corporation headquartered in Switzerland and is the corporate parent of Geneva.

To the extent that the acts of Sandoz/Geneva at issue in this Complaint were performed by or otherwise attributable to Novartis, or any subsidiary or affiliate of it, then judgment should be entered against Novartis where appropriate. At all times material to this action, Sandoz/Geneva transacted business in the State of Florida by, including but not limited to, selling directly or through wholesalers, its specified drugs, including those identified in this Complaint, to purchasers within the State of Florida.

9. Defendant Purepac Pharmaceutical Co. (hereinafter "Purepac") is a corporation organized under the laws of Delaware with its principal offices in Elizabeth, New Jersey. At all times material to this action, Purepac transacted business in the State of Florida by, including but not limited to, selling and distributing its specified drugs, including those identified in this Complaint, to purchasers within the State of Florida, including Leon County. The Defendant Faulding, Inc. (hereinafter "Faulding") is a corporation organized under the laws of Delaware with its principal offices in New Jersey. Purepac became a subsidiary of Faulding. In or about February 2001, the Defendant Mayne Group Limited (hereinafter "Mayne") acquired Faulding, including all of its subsidiaries such as Purepac, and became its corporate parent. Mayne is an Australian company with its principal offices in Melbourne, Australia. In or about October 2001, Alpharma, Inc. (hereinafter "Alpharma") acquired Mayne and all of its subsidiaries, including Purepac, and became its corporate parent. Alpharma is a corporation organized under the laws of Delaware with its principal offices in Fort Lee, New Jersey. The Defendant Alpharma USPD, Inc., f/k/a Barre-National, Inc., (hereinafter "Alpharma USPD") is a Maryland corporation with its principal offices in Baltimore, Maryland. Barre Parent Corporation (hereinafter "Barre") is a Delaware

corporation with its principal offices in Baltimore, Maryland and is the parent corporation of Alpharma USPD. Alpharma is the ultimate parent corporation of Barre. To the extent the acts of Purepac at issue in this action were performed or otherwise attributable to Defendants Faulding, Mayne, Alpharma, Alpharma USPD, or Barre, or any subsidiary or affiliate of these five Defendants, then judgment should be entered against Faulding, Mayne, Alpharma, Alpharma USPD, or Barre where appropriate.

10. Whenever reference is made in this Complaint to any representation, act or transaction of any of the Defendants, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents or representatives, while actively engaged in the course and scope of their employment, did or authorized such representations, acts, or transactions on behalf of the Defendants.

## THE FLORIDA MEDICAID PHARMACEUTICAL PROGRAM

11. The Medicaid Program provides funding for health care for indigent individuals pursuant to § 409.901, Fla. Stat., *et seq.*

12. The State of Florida Medicaid Program is administered by AHCA pursuant to § 409.902, Fla. Stat.

13. The Office of the Attorney General conducts a program of Medicaid fraud control through its Medicaid Fraud Control Unit.

14. Prescribed drug services are a benefit for Medicaid recipients under the Florida Medicaid Program pursuant to § 409.906(20), Fla. Stat.

15. The ultimate providers of pharmaceuticals to Medicaid recipients, including physicians, hospitals, nursing homes, and pharmacies, purchase drugs from

manufacturers or wholesalers[1] and in turn dispense or administer the drugs to Medicaid recipients.

16.     The providers submit claims for reimbursement of their costs incurred in purchasing and dispensing the drugs to AHCA's "fiscal agent" under a Medicaid provider contract pursuant to § 409.907, Fla. Stat. The fiscal agent accomplishes claims adjudication under contract with AHCA on behalf of AHCA. From 1994 until 1996, AHCA's fiscal agent was Consultec, Inc. From 1996 until 1998, AHCA's fiscal agent was the Unisys Corporation. From 1998 through the present, Consultec, Inc. was AHCA's fiscal agent. In 2001, Consultec, Inc., changed its name to ACS, Inc.

17.     Pharmacy claims are submitted in one of two ways. The first is by submitting a completed hard copy pharmacy claim form to the fiscal agent. The second is through an electronic claims filing procedure where the same information required by the hard copy form is transmitted electronically to the fiscal agent. Pharmaceuticals are identified on Florida Medicaid claims and the Florida Medicaid computer system drug file by means of unique identification numbers commonly known as National Drug Codes ("NDC"s). *See Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook*, p. 6-1, *infra*. This handbook is available on AHCA's website. *See*, http://floridamedicaid.acs-inc.com/index.jsp?display=handbooks.

18.     AHCA's current reimbursement to the provider of the drug under the pharmacy program is based on AHCA's best estimate of acquisition cost (hereinafter "EAC") to the provider for the drug. From July 1, 1994, through and including June 30,

---

[1] Including re-packagers and re-lablers.

2004, the EAC was the lower of the "Average Wholesale Price" (hereinafter "AWP")

less 13.25 percent or "Wholesaler Acquisition Cost" (hereinafter "WAC") plus 7 percent.

Pursuant to a legislative change effective July 1, 2004, the EAC is the lower of AWP

less 15.4 percent or WAC plus 5.75 percent, whichever is less.

19. AHCA has established other safeguards to ensure it is a prudent purchaser

of drugs. From July 1, 1994, through and including June 30, 2004, AHCA reimbursed

the least of:

    a). "Average Wholesale Price" ("AWP") less 13.25 percent, plus a

dispensing fee;

    b). "Wholesaler Acquisition Cost" ("WAC") plus 7 percent, plus a

dispensing fee;

    c). the "Federal Upper Limit" ("FUL"), plus a dispensing fee;

    d). the "State Maximum Allowable Cost" ("SMAC"), plus a dispensing fee;

or

    e). the provider's "usual and customary charge" to the public.

See Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p.

6-2, July 2001, as incorporated into law at Rule 59G-4.250, Fla.Admin.Code; See also,

§409.908(14), Fla. Stat.

20. After § 409.908(14), Florida Statutes was amended, AHCA reimburses the

least of:

    a).    "Average Wholesale Price" ("AWP") minus 15.4 percent, plus a

        dispensing fee;

    b).    "Wholesaler Acquisition Cost" ("WAC") plus 5.75 percent, plus a

dispensing fee;

c).   the "Federal Upper Limit" ("FUL"), plus a dispensing fee;

d).   the "State Maximum Allowable Cost" ("SMAC"), plus a dispensing
fee; or

e).   the providers' "usual and customary charge" to the public.

See, Fla. Stat, § 409.908(14).

21.   The Florida Medicaid dispensing fee is currently $4.23 per prescription.
See, Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook,
p. 6-3, supra. An additional $0.015 per unit is paid to pharmacies who prepare in-
house unit dose packaging of tablets or capsules. Id.

22.   The AHCA fiscal agent reimburses pharmaceutical provider claims based
on the current Florida Medicaid computer system drug file prices, and such prices are
derived from pricing information, including AWPs and WACs, supplied and updated
weekly by the First DataBank, Inc. ("First DataBank") National Drug Data file electronic
service. See Prescribed Drug Services Coverage, Limitations and Reimbursement
Handbook, p. 6-3, supra. First DataBank, a division of The Hearst Corporation, is a
nationally-recognized company that specializes in gathering and disseminating
prescription drug pricing information, including AWPs and WACs, to public health
programs and private health insurers.

23.   AHCA's fiscal agent has at all times relevant to this complaint contracted
with First DataBank to provide National Drug Data file prices to establish Florida
Medicaid provider drug reimbursement. The Florida Medicaid Program has utilized First

DataBank as its primary reference source and has utilized representations of AWP and WAC supplied by First DataBank to establish provider reimbursement prices.

24. The manufacturers of the drugs directly supply AWP and WAC on a continual basis to First DataBank. First DataBank uses the AWPs and WACs supplied by the manufacturers, to compile the National Drug Data file price list, which in turn is utilized by the Florida Medicaid Program for its computer system drug file prices. Each drug manufacturer, including each Defendant, filled out, at the request of First DataBank, a "National Drug Data File Product Update Report" including pricing information such as WAC (Wholesale Net), Direct Price ("DP"), and AWP.

25. The Florida Medicaid Program cannot reimburse a provider for any drug not listed in the National Drug Data file. *See* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-2, *supra*. Drug manufacturers, including the Defendants, voluntarily report AWP and WAC pricing information to First DataBank to ensure their products are included in the National Drug Data file and their customers will be reimbursed by the Florida Medicaid Program.

## SUMMARY OF DEFENDANTS' FRAUD SCHEME

26. The Florida Medicaid Program reimburses providers for the drugs they dispense to Medicaid recipients at EAC, estimated acquisition cost. Florida Medicaid determines EAC by using the AWPs and WACs supplied by pharmaceutical manufacturers to First DataBank. The Defendants knowingly misrepresented AWP and WAC prices solely for the purpose of illicit financial gain in an attempt to manipulate and control market share of the Subject Drugs.

27. The Defendants knowingly and intentionally made false representations of

Page 9 of 45

prices and costs for certain of their drugs to the Florida Medicaid Program. The Defendants reported, and caused First DataBank to report, prices for the Subject Drugs that substantially exceeded the market prices known to the Defendants from their own business information. The Defendants knew that reporting false, inflated AWP and WAC prices for the Subject Drugs would cause the Florida Medicaid Program's estimates of the acquisition costs of the Subject Drugs to substantially exceed any reasonable estimates of the acquisition costs of those drugs.

28. The Defendants knowingly and intentionally created a price spread for several of their drugs by supplying to First DataBank prices for those drugs far in excess of the prices for which the drugs were sold. The Defendants intended the Florida Medicaid Program to use those false, inflated prices in setting provider reimbursement rates, and in fact the Florida Medicaid Program did use those false inflated prices to set Medicaid reimbursement rates. As a direct result of its utilization of the false prices supplied by the Defendants, the Medicaid Program paid provider claims for the Subject Drugs dispensed in amounts far in excess of the prices and costs generally and currently available in the marketplace for the Subject Drugs.

29. After creating price spreads for their drugs, Defendants enlarged those spreads by reducing acquisition costs to providers without disclosing the reductions to First DataBank or to the Florida Medicaid Program. Price reductions were accomplished by giving providers financial incentives such as discounts, rebates, off-invoice pricing, free goods, and cash payments. Price reductions were granted to some retail pharmacy chains, wholesalers, buying groups, pharmacy benefit managers at the request of those chains, wholesalers, buying groups or pharmacy benefit managers.

Defendants knowingly utilized these financial incentives to reduce the effective acquisition prices of their drugs, while knowingly reporting AWPs and WACs to First DataBank that were not reflective of the price reductions.

30. After maximizing the spread on their drugs, Defendants engaged in a tactic commonly referred to as "marketing the spread," for the purpose of increasing their market share and maximizing their profits. Providers were induced to buy the Subject Drugs at issue because the Medicaid reimbursements for such drugs, unlike otherwise-identical competing drugs with little or no price spread, far exceeded the providers' acquisition cost generally or currently available in the marketplace. The Defendants actively marketed the spread through sales presentations, bid proposals, advertising, and various pharmacy inventory software programs specifically to increase their market share and profits.

31. The Defendants sold the Subject Drugs to providers, typically retail pharmacies, with full knowledge that the profits realized upon distribution of such drugs to Medicaid recipients far exceeded any commercially reasonable profits that would otherwise be obtained had AWPs and WACs been reported by the Defendants that represented prices and costs generally and currently available in the marketplace based on the Defendants' own business information.

32. The goals of the Defendants' fraudulent business plan include: maximized demand for the drugs at issue, domination of the market for the Subject Drugs, and illegal over-reimbursement of Medicaid provider claims for the drugs at issue. The Defendants inflated their reported prices and marketed the resulting "Spread", with the purpose and intent of increasing sales of the Subject Drugs to Providers. As a direct,

foreseeable, and proximate result of this conduct, they caused false claims for excessive reimbursement to be made to the Florida Medicaid Program. But for each of the Defendants' actions, the Florida Medicaid Program would not have paid the excessive reimbursement amounts which were paid for the Subject Drugs. Consequently, each Defendant is liable under the Florida False Claims Act and for common law fraud for each Medicaid reimbursement claim for the Subject Drugs which resulted in payment of a falsely inflated reimbursement amount.

33. Defendants' knowing misrepresentation of drug prices to First DataBank caused each and every claim paid by the Florida Medicaid Program for the Subject Drugs to be a false claim under § 68.081, Fla. Stat., et seq. The Florida Medicaid Program is also entitled to be reimbursed for all payments made in excess of what the State of Florida Medicaid Program should have paid in pharmacy claims for Defendant's drugs in accordance with the legal remedies for common law fraud.

34. The manufacturers virtually control what price information the payers, including the Florida Medicaid Program, can obtain. Defendants have taken undue advantage of the resulting disparity in status, power and knowledge by knowingly reporting prices for Medicaid reimbursement purposes that bear no relationship whatsoever to prices generally or currently available in the marketplace.

35. The Defendants were in a position to mislead the Florida Medicaid Program, in part, because other drug manufacturers typically report truthful prices for brand drugs, not the generic drugs subject to this action. The Defendants knew that the Florida Medicaid Program uses manufacturer-supplied prices to reimburse providers for 30,000 of the approximately 300,000 NDCs in the Florida Medicaid computer system

drug file in any given month. The Defendants knew that AHCA, with a handful of pharmacy employees, would never have the manufacturers' insider knowledge, resources, or opportunity necessary to discover and remedy the Defendants' drug pricing fraud.

36. The Defendants were fully capable of making representations of price and cost for the Subject Drugs that represented the prices and costs generally and currently available in the marketplace based on the Defendants' own business information.

## THE ACTIONABLE CONDUCT OF DEFENDANTS

37. The Defendants acted knowingly, or in reckless disregard, or in deliberate ignorance of the truth in presenting or causing to be presented to the Florida Medicaid Program false claims for payment or approval in violation of § 68.082(2)(a), Fla. Stat. by:

    a). Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

    b). Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

    c). Concealing or failing to disclose decreases in prices and costs of specified pharmaceuticals by reporting price reductions much smaller than the price reductions generally and currently available in the marketplace;

    d). Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs that decreased the effective prices of the

Page 13 of 45

specified pharmaceuticals;

e).    Reporting that the price or cost of a specified drug was increasing, when in fact it was increasing in a lesser proportion, remained the same, or was decreasing; and

f).    Reporting that the price or cost of a specified drug was the same when in fact it was falling.

38.    The Defendants acted knowingly, or recklessly disregarded, or acted in deliberate ignorance in making, using, or causing to be made false records or statements to get claims paid or approved by the Florida Medicaid Program in violation of § 68.082(2)(b), Fla. Stat. by:

a).    Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

b).    Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

c).    Concealing or failing to disclose decreases in prices and costs of specified pharmaceuticals by reporting price reductions much smaller than the price reductions generally and currently available in the marketplace;

d).    Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs that decreased the effective prices of the specified pharmaceuticals;

e).    Reporting that the price or cost of a specified drug was increasing,

Page 14 of 45

when in fact it was increasing in a lesser proportion, remained the
same, or was decreasing; and

f). Reporting that the price or cost of a specified drug was the same
when in fact it was falling.

39. The Defendants conspired to submit false claims or deceive the Florida
Medicaid Program for the purpose of getting false or fraudulent claims allowed or paid
in violation of § 68.082(2)(c), Fla. Stat., by:

a). Submitting false, inflated prices and costs, including AWPs and
WACs, for specified pharmaceuticals to First DataBank initially;

b). Concealing or failing to disclose decreases in prices and costs of
such pharmaceuticals to First DataBank;

c). Concealing or failing to disclose decreases in prices and costs of
specified pharmaceuticals by reporting price reductions much
smaller than the price reductions generally and currently available
in the marketplace;

d). Concealing or failing to disclose financial incentives such as
discounts, rebates, off-invoice pricing, free goods, cash payments,
and charge backs that decreased the effective prices of the
specified pharmaceuticals;

e). Reporting that the price or cost of a specified drug was increasing,
when in fact it was increasing in a lesser proportion, remained the
same, or was decreasing; and

f). Reporting that the price or cost of a specified drug was the same

Page 15 of 45

when in fact it was falling.

## THE SPECIFIC FALSE PRICE REPRESENTATIONS OF
## DEFENDANTS IVAX/ZENITH-GOLDLINE

40. Throughout the period starting July 1, 1994, through and including the

present date, Ivax/Zenith-Goldline knowingly caused the Florida Medicaid Program to

pay false or fraudulent claims for prescription drugs, including those specified in this

section, and further made or used false or fraudulent records and/or statements to get

such claims paid or approved. As a result of the actions of Ivax/Zenith-Goldline and

those persons and entities acting directly or indirectly in concert with Ivax/Zenith-

Goldline, the Florida Medicaid Program paid grossly excessive, unreasonable, and

unlawful reimbursement amounts for drugs, including those specified in this section.

The acts committed by Ivax/Zenith-Goldline that caused the Florida Medicaid Program

to pay or approve these false or fraudulent claims included, but were not limited to:

knowingly making false representations about prices and costs of drugs, including those

specified in this Section, which Ivax/Zenith-Goldline knew would be used by the Florida

Medicaid Program in paying or approving claims for such drugs; using the Spread as a

financial inducement to increase sales of the Subject Drugs; and paying additional

rebates and discounts to customers effectively reducing the customers' acquisition cost

for these drugs without reporting these discounts and rebates to First DataBank. Each

of these false pricing representations were used by the Florida Medicaid Program in

paying or approving claims for drugs, including those specified in this section.

41. Ivax/Zenith-Goldline knowingly caused its false price and cost

representations to be published for the years specified in this section in First

DataBank's Automated Services and further made or used false records or statements regarding its prices of the drugs, including those specified in this section. For example, the false price representations as reported by Ivax/Zenith-Goldline and reflected by First DataBank and the inflated Medicaid reimbursement amounts calculated by the Florida Medicaid Program are reflected in the following chart for some of Ivax/Zenith-Goldline's Subject Drugs. The amount listed under the Relator's Cost column reflects the prices generally or currently available in the marketplace to the Relator or the Relator's Group Purchasing Organization for the listed drugs from Ivax/Zenith-Goldline or a wholesaler.

| Defendant IVAX/ZENITH-GOLDLINE Clozapine 100mg 100's NDC# 00172-4360-60 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | First DataBank AWP | First DataBank WAC | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" or "AWP" | Maximum Allowable Cost | Relator's Cost / Contract Price | SPREAD $ | SPREAD % (SPREAD $ ÷ RELATOR'S COST) |
| 10-23-2000 | $316.95 | $245.85 | $274.95 | | $165.08 | $109.87 | 67% |
| 12-12-2000 | $316.95 | $245.85 | $274.95 | | $165.08 | $109.87 | 67% |
| 02-22-2001 | $332.80 | $245.85 | $274.95 | | $148.73 | $126.22 | 85% |
| 04-20-2001 | $332.80 | $245.85 | $274.95 | | $156.56 | $118.39 | 76% |
| 06-19-2001 | $332.80 | $245.85 | $274.95 | | $148.73 | $126.22 | 85% |
| 08-09-2001 | $332.80 | $245.85 | $274.95 | | $148.73 | $126.22 | 85% |
| 11-12-2001 | $332.80 | $245.85 | $274.95 | | $148.73 | $126.22 | 85% |
| 01-28-2002 | $332.80 | $245.85 | $274.95 | | $133.07 | $141.88 | 107% |
| 03-10-2002 | $332.80 | $245.85 | $274.95 | | $133.07 | $141.88 | 107% |
| 05-08-2002 | $332.80 | $245.85 | $263.06 | | $133.07 | $129.99 | 98% |
| 06-25-2002 | $332.80 | $245.85 | $263.06 | | $133.07 | $129.99 | 98% |

42. As a direct and proximate result of Ivax/Zenith-Goldline's actions alleged in this Complaint, the State of Florida sustained actual damages in excess of $15,000 together

Page 17 of 45

with treble damages, penalties, and attorneys fees pursuant to the Florida False Claims
Act.

## THE SPECIFIC FALSE PRICE REPRESENTATIONS OF
## DEFENDANT SANDOZ/GENEVA

43. Throughout the period starting July 1, 1994, through and including the
present date, Sandoz/Geneva knowingly caused the Florida Medicaid Program to pay
false or fraudulent claims for prescription drugs, including those specified in this
section, and further made or used false or fraudulent records and/or statements to get
such claims paid or approved. As a result of the actions of Sandoz/Geneva and those
persons and entities acting directly or indirectly in concert with Sandoz/Geneva, the
Florida Medicaid Program paid grossly excessive, unreasonable, and unlawful
reimbursement amounts for drugs, including those specified in this section. The acts
committed by Sandoz/Geneva that caused the Florida Medicaid Program to pay or
approve these false or fraudulent claims included, but were not limited to: knowingly
making false representations about prices and costs of drugs, including those specified
in this Section, which Sandoz/Geneva knew would be used by the Florida Medicaid
Program in paying or approving claims for such drugs; using the Spread as a financial
inducement to increase sales of the Subject Drugs; and paying additional rebates and
discounts to customers, effectively reducing the customer's acquisition cost for these
drugs without reporting these discounts and rebates to First DataBank. Each of these
false pricing representations were used by the Florida Medicaid Program in paying or
approving claims for drugs, including those specified in this section.

44. Sandoz/Geneva knowingly caused its false price and cost representations to

be published for the years specified in this section in First DataBank's Automated

Services and further made or used false records or statements regarding its prices of

the drugs, including those specified in this section. For example, the false price

representations as reported by Sandoz/Geneva and reflected by First DataBank and

the inflated Medicaid reimbursement amounts calculated by the Florida Medicaid

Program are reflected in the following chart for some of Sandoz/Geneva's Subject

Drugs. The amount listed under the Relator's Cost column reflects the prices generally

or currently available in the marketplace to the Relator or the Relator's Group

Purchasing Organization for the listed drugs from Sandoz/Geneva or a wholesaler.

| Defendant SANDOZ/GENEVA RANITIDINE TAB 300mg NDC# 00781-1884-10 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | First DataBank AWP | First DataBank WAC | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" or "AWP" | Maximum Allowable Cost | Relator's Cost Contract Price | SPREAD $ | SPREAD % (SPREAD $ + RELATOR'S COST) |
| 02-22-2001 | $2,687.00 | $712.50 | $2,330.97 | $683.00 | $97.88 | $585.12 | 598% |
| 06-19-2001 | $2,687.00 | $712.50 | $2,330.97 | $683.00 | $97.88 | $585.12 | 598% |
| 11-12-2001 | $2,687.00 | $712.50 | $2,330.97 | $683.00 | $97.88 | $585.12 | 598% |
| 01-28-2002 | $2,687.00 | $712.50 | $2,330.97 | $318.00 | $126.81 | $191.19 | 150% |
| 03-10-2002 | $2,687.00 | $712.50 | $2,330.97 | $318.00 | $126.81 | $191.19 | 150% |
| 05-08-2002 | $2,687.00 | $712.50 | $762.38 | $318.00 | $126.81 | $191.19 | 150% |
| 06-25-2002 | $2,687.00 | $712.50 | $762.38 | $318.00 | $126.81 | $191.19 | 150% |

45. As a direct and proximate result of Sandoz/Geneva's actions alleged in this

Complaint, the State of Florida sustained actual damages in excess of $15,000 together

with treble damages, penalties, and attorneys fees pursuant to the Florida False Claims

Act.

## THE SPECIFIC FALSE PRICE REPRESENTATIONS OF DEFENDANTS PUREPAC/FAULDING/MAYNE/ALPHARMA/ALPHARMA USPD/BARRE

46. Throughout the period starting July 1, 1994, through and including the present date, Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre knowingly caused the Florida Medicaid Program to pay false or fraudulent claims for prescription drugs, including those specified in this section, and further made or used false or fraudulent records and/or statements to get such claims paid or approved. As a result of the actions of Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre and those persons and entities acting directly or indirectly in concert with Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre, the Florida Medicaid Program paid grossly excessive, unreasonable, and unlawful reimbursement amounts for drugs, including those specified in this section. The acts committed by Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre that caused the Florida Medicaid Program to pay or approve these false or fraudulent claims included, but were not limited to: knowingly making false representations about prices and costs of drugs, including those specified in this Section, which Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre knew would be used by the Florida Medicaid Program in paying or approving claims for such drugs and using the Spread as a financial inducement to increase sales of the Subject Drugs. Each of these false pricing representations were used by the Florida Medicaid Program in paying or approving claims for drugs, including those specified in this section.

47. Purepac/Fauldng/Mayne/Alpharma/Alpharma USPD/Barre knowingly caused its false price and cost representations to be published for the years specified in this section in First DataBank's Automated Services and further made or used false records or statements regarding its prices of the drugs, including those specified in this section. For example, the false price representations as reported by Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre and reflected by First DataBank and the inflated Medicaid reimbursement amounts calculated by the Florida Medicaid Program are reflected in the following chart for some of Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre's Subject Drugs. The amount listed under the Relator's Cost column reflects the prices generally or currently available in the marketplace to the Relator or the Relator's Group Purchasing Organization for the listed drugs from Purepac or a wholesaler.

| Defendant PUREPAC ISOSORBIDE 30MG NDC #00228-2713-11 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | First DataBank AWP | First DataBank WAC | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" or "AWP" | Maximum Allowable Cost | Relator's Cost Contract Price | SPREAD $ | SPREAD % (SPREAD $ ÷ RELATOR'S COST) |
| 11-12-2001 | $129.13 | $77.48 | $112.02 | | $72.56 | $39.46 | 54% |
| 01-28-2002 | $129.13 | $77.48 | $112.02 | | $72.56 | $39.46 | 54% |
| 03-10-2002 | $129.13 | $77.48 | $112.02 | | $72.56 | $39.46 | 54% |
| 11-21-2002 | $144.81 | $77.48 | $82.90 | | $10.06 | $72.84 | 724% |
| 11-05-2004 | $144.81 | $77.48 | $82.90 | $22.08 | $10.06 | $12.00 | 119% |
| 03-31-2005 | $144.81 | $77.48 | $82.90 | $22.08 | $10.06 | $12.00 | 119% |

48. As a direct and proximate result of

Purepac/Faulding/Mayne/Alpharma/Alpharma USPD/Barre's actions alleged in this

Complaint, the State of Florida sustained actual damages in excess of $15,000 together

with treble damages, penalties, and attorneys fees pursuant to the Florida False Claims

Act.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT IVAX

49.  The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48

as though fully set forth herein.

50.  Ivax knowingly presented or caused to be presented false claims for

payment to the Florida Medicaid Program creating liability for a false claims action

pursuant to § 68.081, Fla. Stat., *et seq.*

51.  As a result of Ivax's conduct set forth in this count, the State of Florida,

AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered

actual damages in excess of $15,000.

52.  Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to

treble the actual damages sustained, not less than $5,000 and not more than $10,000

penalty per claim, all other relief set forth in said statutes, prejudgment interest,

attorneys' fees and court costs.

### COUNT II
### COMMON LAW FRAUD
### DEFENDANT IVAX

53.  The Plaintiffs reallege and incorporate by reference paragraphs 1 through

48 as though fully set forth herein.

54. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

55. Ivax made false statements of material fact regarding drug prices to First DataBank; Ivax knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Ivax knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Ivax submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

56. As a result of Ivax's conduct as set forth in this Count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

57. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Ivax's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

### COUNT III
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT IVAX/ZENITH-GOLDLINE

58. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

59. Ivax/Zenith-Goldline, through its parent company Ivax, knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., *et seq.*

60. As a result of Ivax/Zenith-Goldline's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

61. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

### COUNT IV
### COMMON LAW FRAUD
### DEFENDANT IVAX/ZENITH-GOLDLINE

61. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

62. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the

injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

63. Ivax/Zenith-Goldline, by and through its parent company Ivax, made false statements of material fact regarding drug prices to First DataBank; Ivax/Zenith-Goldline, by and through its parent company Ivax, knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Ivax/Zenith-Goldline, by and through its parent company Ivax, knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Ivax/Zenith-Goldline, by and through its parent company Ivax, submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

65. As a result of Ivax/Zenith-Goldline's conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

66. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Ivax/Zenith-Goldline and/or Ivax's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT V
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT

## DEFENDANT SANDOZ/GENEVA

67. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

68. Sandoz/Geneva knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., *et seq.*

69. As a result of Sandoz/Geneva's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

70. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

## COUNT VI
## COMMON LAW FRAUD
## DEFENDANT SANDOZ/GENEVA

71. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

72. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA

1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

73. Sandoz/Geneva made false statements of material fact regarding drug prices to First DataBank; Sandoz/Geneva knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Sandoz/Geneva knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Sandoz/Geneva submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

74. As a result of Sandoz/Geneva's conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

75. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Sandoz/Geneva's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT VII
## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
## DEFENDANT NOVARTIS

76. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

77. Novartis, by and through its subsidiary Sandoz/Geneva knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., et seq.

78. As a result of Novartis' conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

79. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

## COUNT VIII
## COMMON LAW FRAUD
## DEFENDANT NOVARTIS

80. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

81. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. See e.g., Tucker v. Mariani, 655 So.2d 221, 225 (Fla. 1st DCA 1995); Lance v. Wade, 457 So.2d 1008, 1011 (Fla.1984).

82. Novartis, by and through its subsidiary Sandoz/Geneva, made false statements of material fact regarding drug prices to First DataBank; Novartis, by and

through its subsidiary Sandoz/Geneva knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Novartis, by and through its subsidiary Sandoz/Geneva knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Novartis, by and through its subsidiary Sandoz/Geneva submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

83. As a result of Novartis' conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

84. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Novartis and/or Sandoz/Geneva's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT IX
## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
## DEFENDANT PUREPAC

85. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

86. Purepac knowingly presented or caused to be presented false claims for

payment to the Florida Medicaid Program creating liability for a false claims action

pursuant to § 68.081, Fla. Stat., *et seq.*

87.  As a result of Purepac's conduct set forth in this count, the State of Florida,

AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered

actual damages in excess of $15,000.

88.  Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to

treble the actual damages sustained, not less than $5,000 and not more than $10,000

penalty per claim, all other relief set forth in said statutes, prejudgment interest,

attorneys' fees and court costs.

### COUNT X
### COMMON LAW FRAUD
### DEFENDANT PUREPAC

89.  The Plaintiffs reallege and incorporate by reference paragraphs 1 through

48 as though fully set forth herein.

90.  The elements of common law fraud in Florida are: a false statement

concerning a material fact; knowledge by the person making the statement that the

representation is false; the intent by the person making the statement that the

representation will induce another to act on it; and reliance on the representation to the

injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA

1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

91.  Purepac made false statements of material fact regarding drug prices to

First DataBank; Purepac knew that the submitted prices were false and significantly

exceeded prices generally or currently available in the marketplace; Purepac knew that

the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Purepac submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

92. As a result of Purepac's conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

93. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Purepac's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

### COUNT XI
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT FAULDING

112. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

113. Faudling, by and through its subsidiary Purepac, knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., *et seq.*

114. As a result of Faulding's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered

actual damages in excess of $15,000.

115. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

### COUNT XII
### COMMON LAW FRAUD
### DEFENDANT FAULDING

116. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

117. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

118. Faulding, by and through its subsidiary Purepac, made false statements of material fact regarding drug prices to First DataBank; Faulding, by and through its subsidiary Purepac, knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Faulding, by and through its subsidiary Purepac, knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Faulding, by and through its subsidiary Purepac, submitted to First DataBank;

and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

119. As a result of Faulding's conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

120. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages, to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Faulding and/or Purepac's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT XIII
## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
## DEFENDANT MAYNE

121. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

122. Mayne, by and through its subsidiary, Purepac knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., *et seq.*

123. As a result of Mayne's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

124. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled

to treble the actual damages sustained, not less than $5,000 and not more than

$10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest,

attorneys' fees and court costs.

### COUNT XIV
### COMMON LAW FRAUD
### DEFENDANT MAYNE

125. The Plaintiffs reallege and incorporate by reference paragraphs 1 through

48 as though fully set forth herein.

126. The elements of common law fraud in Florida are: a false statement

concerning a material fact; knowledge by the person making the statement that the

representation is false; the intent by the person making the statement that the

representation will induce another to act on it; and reliance on the representation to the

injury of the other party. See e.g., Tucker v. Mariani, 655 So.2d 221, 225 (Fla. 1st DCA

1995); Lance v. Wade, 457 So.2d 1008, 1011 (Fla.1984).

127. Mayne, through its subsidiary Purepac, made false statements of material

fact regarding drug prices to First DataBank; Mayne, by and through its subsidiary

Purepac, knew that the submitted prices were false and significantly exceeded prices

generally or currently available in the marketplace; Mayne, by and through its subsidiary

Purepac knew that the Florida Medicaid Program relied on First DataBank prices and

intended that the Florida Medicaid Program rely upon the false prices Mayne, by and

through its subsidiary Purepac submitted to First DataBank; and, the Florida Medicaid

Program did in fact rely upon such false price representations and was injured by

paying provider reimbursements far in excess of reasonable estimates of provider

acquisition cost as required by law.

128. As a result of Mayne's conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

129. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Mayne and/or Purepac's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT XV
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT ALPHARMA

130. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

131. Alpharma, by and through its subsidiary Purepac, knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., et seq.

132. As a result of Alpharma's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

133. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest,

attorneys' fees and court costs.

## COUNT XVI
## COMMON LAW FRAUD
## DEFENDANT ALPHARMA

134. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

135. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

136. Alpharma, by and through its subsidiary Purepac, made false statements of material fact regarding drug prices to First DataBank; Alpharma, by and through its subsidiary Purepac knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Alpharma, by and through its subsidiary Purepac knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Alpharma by and through its subsidiary Purepac submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

137. As a result of Alpharma's conduct as set forth in this count, the State of

Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

138. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Alpharma and/or Purepac's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT XVII
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT ALPHARMA USPD f/k/a BARRE-NATIONAL, INC.

139. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

140. Alpharma USPD, f/k/a Barre-National, Inc., by and through its subsidiary Purepac, knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., *et seq.*

141. As a result of Alpharma USPD f/k/a Barre-National, Inc.'s conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

142. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

## COUNT XIX
## COMMON LAW FRAUD
## DEFENDANT ALPHARMA USPD f/k/a BARRE-NATIONAL, INC.

143. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

144. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

145. Alpharma USPD, f/k/a Barre-National, Inc., by and through its subsidiary Purepac, made false statements of material fact regarding drug prices to First DataBank; Alpharma USPD, f/k/a Barre-National, Inc., by and through its subsidiary Purepac knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Alpharma USPD, f/k/a Barre-National, Inc., by and through its subsidiary Purepac knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Alpharma USPD, f/k/a Barre-National, Inc., by and through its subsidiary Purepac submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

146. As a result of Alpharma USPD, f/k/a Barre-National, Inc.'s conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.

147. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Alpharma USPD, f/k/a Barre-National, Inc. and/or Purepac's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT XIX
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT BARRE

148. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

149. Barre, by and through its subsidiary Purepac, knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, Fla. Stat., *et seq*.

150. As a result of Barre's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

151. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

**COUNT XX**
**COMMON LAW FRAUD**
**DEFENDANT BARRE**

152. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

153. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

154. Barre, by and through its subsidiary Purepac, made false statements of material fact regarding drug prices to First DataBank; Barre, by and through its subsidiary Purepac knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Barre, by and through its subsidiary Purepac knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Barre, by and through its subsidiary Purepac submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

155. As a result of Barre conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual

damages in excess of $15,000.

156. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Barre and/or Purepac's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand that judgment be entered in favor of the State of Florida and the Relator against the Defendants as follows:

A. On Counts I and III, the Plaintiffs demand treble the amount of the State of Florida's actual damages of at least $15,000 or at least $45,000 against Defendants Ivax and Ivax/Zenith-Goldline, as appropriate, for the period beginning on or before July 1, 1994, through and including the present time pursuant to § 68.082(2), Fla. Stat. In addition, the Plaintiffs demand that Defendants Ivax and Ivax/Zenith-Goldline be assessed a civil penalty of $10,000, as appropriate, for each and every false claim identified in this action for their specific drugs and any and all false claims for their Subject Drugs revealed through the discovery. The Plaintiffs further demand payment of prejudgment interest, attorneys' fees, expenses, investigatory costs, and for such other and further relief as the Court deems just and equitable pursuant to § 68.086, Fla. Stat.

B. On Counts II and IV, the Plaintiffs demand a judgment for the return of at least $15,000 which represents the difference between the amounts paid and the

amounts that should have been paid for the Defendants Ivax and Ivax/Zenith-Goldline's

Subject Drugs identified in this Complaint, as appropriate, by the State of Florida,

AHCA or its fiscal intermediary, for the period beginning July 1, 1994, through and

including the present time, and for prejudgment interest, costs, and for such other and

further relief as this Court deems just and equitable.

C. On Counts V and VII, the Plaintiffs demand treble the amount of the State of

Florida's actual damages of at least $15,000 or at least $45,000 against Defendants

Sandoz/Geneva and Novartis as appropriate, before July 1, 1994, through and

including the present time pursuant to § 68.082(2), Fla. Stat. In addition, the Plaintiffs

demand that Defendants Sandoz/Geneva and Novartis be assessed a civil penalty of

$10,000, as appropriate, for each and every false claim identified in this action for their

specific drugs and any and all false claims for their specific drugs revealed through the

discovery. The Plaintiffs further demand payment of prejudgment interest, attorneys'

fees, expenses, investigatory costs, and for such other and further relief as the Court

deems just and equitable pursuant to § 68.086, Fla. Stat.

D. On Counts VI, VIII, the Plaintiffs demand judgment for the return of at least

$15,000 which represents the difference between the amounts paid and the amounts

that should have been paid for Defendants Sandoz/Geneva and Novartis's specific

drugs identified in this Complaint, as appropriate, by the State of Florida, AHCA or its

fiscal intermediary, for the period beginning July 1, 1994, through and including the

present time, and for prejudgment interest, costs, and for such other and further relief

as this Court deems just and equitable.

E. On Counts IX, XI, XIII, XV, XVII and XIX the Plaintiffs demand treble the

Page 42 of 45

amount of the State of Florida's actual damages of at least $15,000 or at least $45,000 against Defendants Purepac, Faulding, Mayne, Alpharma, Alpharma USPD, f/k/a Barre-National, Inc., and Barre as appropriate, before July 1, 1994, through and including the present time pursuant to § 68.082(2), Fla. Stat. In addition, the Plaintiffs demand that Defendants Purepac, Faulding, Mayne, Alpharma, Apharma USPD, Inc., f/k/a Barre-National, Inc., and Barre be assessed a civil penalty of $10,000, as appropriate, for each and every false claim identified in this action for their specific drugs and any and all false claims for their specific drugs revealed through the discovery. The Plaintiffs further demand payment of prejudgment interest, attorneys' fees, expenses, investigatory costs, and for such other and further relief as the Court deems just and equitable pursuant to § 68.086, Fla. Stat.

F. On Counts X, XII, XIV, XVI, XVIII, and XX, the Plaintiffs demand a judgment for the return of at least $15,000 which represents the difference between the amounts paid and the amounts that should have been paid for the Defendants Purepac, Faulding, Mayne, Alpharma, Alpharma USPD f/k/a Barre-National Inc., and Barre's specific drugs identified in this Complaint, as appropriate, by the State of Florida, AHCA or its fiscal intermediary, for the period beginning July 1, 1994, through and including the present time, and for prejudgment interest, costs, and for such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

The STATE OF FLORIDA and the RELATOR respectfully demand trial by jury of all issues so triable.

Respectfully submitted this 6th day of _April_, 2005.

CHARLES J. CRIST, JR.
ATTORNEY GENERAL
STATE OF FLORIDA

By:

MARK S. THOMAS
Florida Bar No. 0001716
MARY S. MILLER
Florida Bar No. 0780420
Assistant Attorneys General
OFFICE OF THE ATTORNEY
GENERAL
MEDICAID FRAUD CONTROL UNIT
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone:   850-414-3600
Facsimile:   850-410-2673

JAMES J. BREEN, ESQ.
Florida Bar Number 297178
ALISON W. SIMON, ESQ.
Florida Bar Number 0109568
The Breen Law Firm, P.A.
P.O. Box 297470
Pembroke Pines, Florida 33029-7470
954-874-1653 (telephone)
954-874-1705 (facsimile)
Counsel for Ven-A-Care of the Florida Keys, Inc.

GARY AZORSKY, ESQ.
Pennsylvania Bar Number 38924
SHERRIE SAVETT, ESQ.
Pennsylvania Bar Number 17646
SUSAN SCHNEIDER THOMAS, ESQ.
Pennsylvania Bar Number 32799
JOY P. CLAIRMONT, ESQ.
Pennsylvania Bar Number 82775
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
215-875-3000 (telephone)
215-875-4636 (facsimile)
Counsel for Ven-A-Care of the Florida Keys, Inc.

## EXHIBIT "A"

| DEFENDANT | DRUG | MANUFACTURER | NDC CODE |
|---|---|---|---|
| Ivax | Enalapril | Ivax/Zenith | 001724-195-10 |
| Ivax | Enalapril | Ivax/Zenith | 001724-195-60 |
| Ivax | Enalapril | Ivax/Zenith | 001724-195-80 |
| Ivax | Enalapril | Ivax/Zenith | 001724-195-85 |
| Ivax | Enalapril | Ivax/Zenith | 001724-196-10 |
| Ivax | Enalapril | Ivax/Zenith | 001724-196-60 |
| Ivax | Enalapril | Ivax/Zenith | 001724-196-80 |
| Ivax | Enalapril | Ivax/Zenith | 001724-196-85 |
| Ivax | Enalapril | Ivax/Zenith | 001724-197-10 |
| Ivax | Enalapril | Ivax/Zenith | 001724-197-60 |
| Ivax | Enalapril | Ivax/Zenith | 001724-197-80 |
| Ivax | Enalapril | Ivax/Zenith | 001724-197-85 |
| Ivax | Enalapril | Ivax/Zenith | 001724-198-10 |
| Ivax | Enalapril | Ivax/Zenith | 001724-198-60 |
| Ivax | Enalapril | Ivax/Zenith | 001724-198-70 |
| Ivax | Enalapril | Ivax/Zenith | 001724-198-80 |
| Ivax | Enalapril | Novaplus | 001724-195-64 |
| Ivax | Enalapril | Novaplus | 001724-195-93 |
| Ivax | Enalapril | Novaplus | 001724-196-64 |
| Ivax | Enalapril | Novaplus | 001724-196-93 |
| Ivax | Enalapril | Novaplus | 001724-197-64 |
| Ivax | Enalapril | Novaplus | 001724-197-93 |
| Ivax | Enalapril | Novaplus | 001724-198-64 |
| Ivax | Enalapril | Novaplus | 001724-198-93 |
| Ivax | Furosemide | Ivax/Zenith | 001722-907-60 |
| Ivax | Furosemide | Ivax/Zenith | 001722-907-70 |

| DEFENDANT | DRUG | MANUFACTURER | NDC CODE |
|-----------|------|--------------|----------|
| Ivax | Furosemide | Ivax/Zenith | 001722-907-80 |
| Ivax | Furosemide | Ivax/Zenith | 001722-908-60 |
| Ivax | Furosemide | Ivax/Zenith | 001722-908-70 |
| Ivax | Furosemide | Ivax/Zenith | 001722-908-80 |
| Ivax | Furosemide | Goldline Drug | 001821-161-01 |
| Ivax | Furosemide | Goldline Drug | 001821-161-10 |
| Ivax | Furosemide | Goldline Drug | 001821-170-01 |
| Ivax | Furosemide | Goldline Drug | 001821-170-10 |
| Ivax | Furosemide | Goldline Drug | 001821-736-01 |
| Ivax | Furosemide | Goldline Drug | 001821-736-05 |
| Ivax | Furosemide | Goldline Drug | 001821-736-89 |
| Ivax | Furosemide | Ivax/Goldline | 001821-161-89 |
| Ivax | Furosemide | Ivax/Goldline | 001826-053-37 |
| Ivax | Furosemide | Ivax/Goldline | 001826-053-68 |
| Ivax | Clozapine | Ivax/Zenith | 001724-303-10 |
| Ivax | Clozapine | Ivax/Zenith | 001724-303-46 |
| Ivax | Clozapine | Ivax/Zenith | 001724-303-60 |
| Ivax | Clozapine | Ivax/Zenith | 001724-359-10 |
| Ivax | Clozapine | Ivax/Zenith | 001724-359-60 |
| Ivax | Clozapine | Ivax/Zenith | 001724-359-70 |
| Ivax | Clozapine | Ivax/Zenith | 001724-360-10 |
| Ivax | Clozapine | Ivax/Zenith | 001724-360-60 |
| Ivax | Clozapine | Ivax/Zenith | 001724-360-70 |
| Geneva | Enalapril | Geneva | 007811-229-01 |
| Geneva | Enalapril | Geneva | 007811-229-10 |
| Geneva | Enalapril | Geneva | 007811-229-13 |
| Geneva | Enalapril | Geneva | 007811-231-01 |

| DEFENDANT | DRUG | MANUFACTURER | NDC CODE |
|---|---|---|---|
| Geneva | Enalapril | Geneva | 007811-231-10 |
| Geneva | Enalapril | Geneva | 007811-231-13 |
| Geneva | Enalapril | Geneva | 007811-232-01 |
| Geneva | Enalapril | Geneva | 007811-232-10 |
| Geneva | Enalapril | Geneva | 007811-232-13 |
| Geneva | Enalapril | Geneva | 007811-233-01 |
| Geneva | Enalapril | Geneva | 007811-233-10 |
| Geneva | Ranitidine | Geneva | 007811-883-01 |
| Geneva | Ranitidine | Geneva | 007811-883-05 |
| Geneva | Ranitidine | Geneva | 007811-884-01 |
| Geneva | Ranitidine | Geneva | 007811-884-10 |
| Geneva | Ranitidine | Geneva | 007811-884-13 |
| Geneva | Ranitidine | Geneva | 007811-865-05 |
| Geneva | Alprazolam | Geneva | 007811-061-10 |
| Geneva | Alprazolam | Geneva | 007811-061-13 |
| Geneva | Alprazolam | Geneva | 007811-077-10 |
| Geneva | Alprazolam | Geneva | 007811-077-13 |
| Geneva | Alprazolam | Geneva | 007811-079-10 |
| Geneva | Alprazolam | Geneva | 007811-079-13 |
| Geneva | Alprazolam | Geneva | 007811-326-01 |
| Geneva | Alprazolam | Geneva | 007811-326-05 |
| Geneva | Alprazolam | Geneva | 007811-326-10 |
| Geneva | Alprazolam | Geneva | 007811-326-13 |
| Geneva | Alprazolam | Geneva | 007811-327-01 |
| Geneva | Alprazolam | Geneva | 007811-327-05 |
| Geneva | Alprazolam | Geneva | 007811-327-10 |
| Geneva | Alprazolam | Geneva | 007811-327-13 |

| DEFENDANT | DRUG | MANUFACTURER | NDC CODE |
|---|---|---|---|
| Geneva | Alprazolam | Geneva | 007811-328-01 |
| Geneva | Alprazolam | Geneva | 007811-328-05 |
| Geneva | Alprazolam | Geneva | 007811-328-10 |
| Geneva | Alprazolam | Geneva | 007811-328-13 |
| Geneva | Alprazolam | Geneva | 007811-329-01 |
| Geneva | Alprazolam | Geneva | 007811-329-05 |
| Geneva | Alprazolam | Geneva | 007811-329-10 |
| Geneva | Lorazepam | Geneva | 007811-403-13 |
| Geneva | Lorazepam | Geneva | 007811-404-10 |
| Geneva | Lorazepam | Geneva | 007811-404-13 |
| Geneva | Lorazepam | Geneva | 007811-405-13 |
| Purepac | Isosorbide | Purepac | 002282-620-11 |
| Purepac | Isosorbide | Purepac | 002282-631-11 |
| Purepac | Isosorbide | Purepac | 002282-711-11 |
| Purepac | Isosorbide | Purepac | 002282-711-51 |
| Purepac | Isosorbide | Purepac | 002282-713-11 |
| Purepac | Isosorbide | Purepac | 002282-713-50 |
| Purepac | Clonazepam | Purepac | 002283-003-11 |
| Purepac | Clonazepam | Purepac | 002283-003-50 |
| Purepac | Clonazepam | Purepac | 002283-004-11 |
| Purepac | Clonazepam | Purepac | 002283-004-50 |
| Purepac | Clonazepam | Purepac | 002283-005-11 |
| Purepac | Clonazepam | Purepac | 002283-005-50 |
| Purepac | Pentoxifylline | Purepac | 002282-611-11 |
| Purepac | Pentoxifylline | Purepac | 002282-611-50 |
| Purepac | Pentoxifylline | Purepac | 002282-611-96 |
| Purepac | Pentoxifylline | Purepac | 002282-747-11 |

| DEFENDANT | DRUG | MANUFACTURER | NDC CODE |
|-----------|------|--------------|----------|
| Purepac | Pentoxifylline | Purepac | 002282-747-50 |
| Purepac | Pentoxifylline | Purepac | 002282-769-11 |
| Purepac | Pentoxifylline | Purepac | 002282-769-50 |
| Purepac | Pentoxifylline | Purepac | 002282-769-96 |
| Purepac | Alprazolam | Purepac | 002282-027-10 |
| Purepac | Alprazolam | Purepac | 002282-027-50 |
| Purepac | Alprazolam | Purepac | 002282-027-96 |
| Purepac | Alprazolam | Purepac | 002282-029-10 |
| Purepac | Alprazolam | Purepac | 002282-029-50 |
| Purepac | Alprazolam | Purepac | 002282-029-96 |
| Purepac | Alprazolam | Purepac | 002282-031-10 |
| Purepac | Alprazolam | Purepac | 002282-031-50 |
| Purepac | Alprazolam | Purepac | 002282-031-96 |
| Purepac | Alprazolam | Purepac | 002282-039-10 |
| Purepac | Alprazolam | Purepac | 002282-039-50 |
| Purepac | Lorazepam | Purepac | 002282-057-10 |
| Purepac | Lorazepam | Purepac | 002282-057-50 |
| Purepac | Lorazepam | Purepac | 002282-059-10 |
| Purepac | Lorazepam | Purepac | 002282-059-50 |
| Purepac | Lorazepam | Purepac | 002282-063-10 |
| Purepac | Lorazepam | Purepac | 002282-063-50 |
| Purepac | Lorazepam | Purepac | 002282-063-96 |
|  |  |  |  |

C:\Documents and Settings\yoona\Local Settings\Temp\C.Lotus.Notes.Data\exhibit a.wpd